1921

The STATE, Respondent v. Clifford W. CORNS, Jr., Appellant.

(426 S.E. (2d) 324)

Court of Appeals

---

*Asst. Appellate Defender Robert M. Pachak,* of *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty: Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka* and *Asst. Atty. Gen. Harold M. Coombs, Jr.,* Columbia, and *Sol. Ralph J. Wilson,* Conway, *for respondent.*

Heard Nov. 9, 1992.

Decided Dec. 7, 1992.

SHAW, Judge:

Clifford W. Corns, Jr. appeals his conviction and sentence for possession of more than one ounce of marijuana. We reverse and remand for a new trial.

Corns raised the following three issues on appeal: (1) whether the trial judge erred in refusing to suppress marijuana seized from his residence because the information relied upon to establish probable cause to search was stale; (2) whether the trial judge erred in refusing to suppress the marijuana seized at his residence because the state failed to comply with the procedures set forth in S.C. Code Ann. § 17-13-140 (1985); and (3) whether the trial judge erred in admitting oral statements made by Corns while in custody because the statements were made involuntarily in response to threats regarding his family. While we find no error in the admission of the marijuana, we find the statements made by Corns were improperly admitted.

## FACTS

Around August 31, 1990, Detective Merriman of the Chatham County Sheriff's Department in Georgia contacted Detective Roper of the Horry County Police Department concerning some information he had received from an informant in regard to some armed robberies which occurred in Horry County. On October 5, Detective Roper drove to Savannah, Georgia to interview the informant who gave the

detective information about armed robberies that had been committed in Horry County. The informant stated he had stayed at Corns's house in August and gave particulars as to the victims of a March 1990 robbery and items used in the commission of the crime including dark clothes, ski masks and guns.

On October 29, Detective Roper again travelled to Savannah in an attempt to obtain more information from a second suspect. From October 5 through October 29, the Horry County police officers verified information obtained from the informant. During this time, they also placed Corns's house under surveillance based on information another crime might be committed. On October 29, the officers procured a search warrant for Corns's house authorizing the seizure of certain items of dark clothing, ski masks, gloves, weapons, ammunition, a diamond ring, a watch, two bank bags, a wallet, a purse and yellow tape. The officers executed the warrant the same day and found a large number of the items listed in the warrant. They also found marijuana in two places inside the house and in a car outside the house. Corns was arrested that evening and charged with, among other things, possession of marijuana with intent to distribute.

On the night of October 29, subsequent to Corns's arrest, Detective Roper attempted to interview Corns but Corns would not give a statement. Approximately four days to a week after Corns's arrest, Detective Roper and Captain Fowler went to the jail to see Corns. Detective Roper testified the visit was initiated at Corns's request. He further stated he advised Corns of his *Miranda* rights, and that Corns stated he understood those rights. Although Detective Roper testified he did not threaten or intimidate Corns, he admitted that during the interview, he informed Corns he had a warrant for Corns's wife, that his wife could be arrested, and that the Department of Social Services could take his children. He further stated after he advised Corns of this that Corns was very uneasy and then stated something to the effect of "I'll plead guilty to the marijuana, just don't mess with my wife and kids." Captain Fowler corroborated Detective Roper's version of this interview acknowledging Corns was told his wife "would be involved in the marijuana" at which point Corns indicated his wife had nothing to do with

the marijuana and he would claim it.

On November 28, Detective Roper interviewed Corns again, this time in the presence of Detective Avant. Detective Roper stated this visit was also at Corns's request and that Corns said the marijuana was his.

Corns testified that on October 29, Detective Roper told him he could take out a warrant for his wife, that his wife could be put in jail and that his children could be taken by D.S.S. He further stated that three or four days later, Detectives Roper and Avant came to the jail and reminded him they had a warrant for his wife's arrest and the children could be taken by D.S.S. At that point he told them he would plead guilty to the marijuana if they would just leave his wife and children alone.

## SUPPRESSION OF THE MARIJUANA

Corns contends the marijuana should have been suppressed at the trial for two reasons. He first argues, because 60 days lapsed between the time the informant had seen the items in Corns's home and the officers obtained the search warrant, the information relied on to establish probable cause to search was stale and the warrant was, thus, ineffective. We disagree.

It is true that a probable cause affidavit must state facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time. *State v. Winborne*, 273 S.C. 62, 254 S.E. (2d) 297 (1979). And, as noted by the trial judge, a sixty-day lapse in time is long. However, as also noted by the trial judge, the delay was occasioned by the fact that the officers had information further criminal activity may occur and the house was thus under surveillance and the execution of a warrant may have interfered with this surveillance. Further, the items sought by the warrant were ski masks, clothing and weapons used in an armed robbery. Under similar circumstances, the Eighth Circuit of the United States Court of Appeals found a delay of 87 days between commission of the crime and issuance of the search warrant did not invalidate the warrant. In *United States v. Steeves*, 525 F. (2d) 33 (8th Cir. 1975), the court held as follows:

While the lapse of time involved is an important consideration and may in some cases be controlling, it is not

necessarily so. There are other factors to be considered, including the nature of the criminal activity involved, and the kind of property for which authority to search is sought. Obviously, a highly incriminating or consumable item of personal property is less likely to remain in one place as long as an item of property which is not consumable or which is innocuous in itself or not particularly incriminating.

The court went on to note that the ski mask and clothing sought in the warrant were not incriminating in themselves and that people who own pistols generally keep them at home or on their persons. While the case at hand involves a delay between the time the informant observed the items sought in the home of the defendant and the execution of the warrant, we find the analysis compelling. Considering the totality of the circumstances, we cannot say the time lapse with which we are concerned was so great as to invalidate the warrant as a matter of law.

Corns next contends the marijuana found in the search should have been suppressed because the return was not made within 10 days and the marijuana seized was not listed on the return as required by S.C. Ann. § 17-13-140 (1985). We disagree.

§ 17-13-140 provides in pertinent part: Any warrant issued hereunder shall be executed and return made only within ten days after it is dated. The officer executing the warrant shall make and deliver a signed inventory of any articles seized by virtue of the warrant, which shall be delivered to the judicial officer to whom the return is to be made, and if a copy of the inventory is demanded by the person from whose person or premises the property is taken, a copy of the inventory shall be delivered to him.

In *State v. Wise*, 272 S.C. 384, 252 S.E. (2d) 294 (1979) (overruled on other grounds) our Supreme Court held that a failure to observe the 10-day requirement for execution and return under § 17-13-140 did not void the warrant, noting the requirement was ministerial and the appellant failed to show he was prejudiced by the delay. Similarly, the appellant here has failed to show any prejudice in the failure to comply with the 10-day requirement. We

further hold that the listing of the items seized is, likewise, a ministerial act under this code section and because Corns has shown no prejudice in the failure to list the marijuana, we find the warrant was not invalidated.

## SUPPRESSION OF ORAL STATEMENTS

Finally, Corns contends the trial judge erred in admitting his oral statements in regard to the marijuana arguing the statements were involuntarily made in response to threats that his wife could be arrested and his children taken by D.S.S. We agree.

A reading of the record as a whole with special consideration of the testimony of the officers who witnessed the oral statements leads us to the conclusion that, at the very least, the officers coerced Corns's confession on the marijuana by means of veiled threats against his family. When a defendant waives his *Miranda* rights and gives a statement, the burden is on the State to prove his rights were voluntarily waived by a preponderance of the evidence. *State v. Franklin*, 299 S.C. 133, 382 S.E. (2d) 911 (1989). The trial judge's determination of the voluntariness of a statement must be made on the basis of the totality of the circumstances, including the background, experience and conduct of the accused. *Id.* 382 S.E. (2d) at 914. A confession may not be extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of improper influence. *State v. Rochester*, 301 S.C. 196, 391 S.E. (2d) 244 (1990). We find that the testimony of the officers conceding they informed Corns his wife could be arrested, that she could be "involved in the marijuana," and that their children could be taken from them amounted to an exertion of improper influence rendering Corns's statement involuntary. Accordingly, we find the trial judge erred as a matter of law in allowing Corns's oral statements into evidence.

For the reasons discussed above, the conviction is reversed and this case is remanded for a new trial.

Reversed and remanded.

BELL and CURETON, JJ., concur.