# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Bryant Kinloch, Respondent.

Appellate Case No. 2012-212981

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Charleston County
The Honorable Roger M. Young, Sr, Circuit Court Judge.

---

Opinion No. 27473
Heard October 8, 2014 – Filed December 23, 2014

---

## REVERSED AND REMANDED

---

Attorney General Alan McCrory Wilson and Assistant
Attorney General William M. Blitch, Jr., both of
Columbia, for Petitioner.

Appellate Defender Kathrine Haggard Hudgins, of
Columbia, for Respondent.

---

**JUSTICE PLEICONES:** Bryant Kinloch was charged with trafficking cocaine, trafficking heroin, and possession with intent to distribute heroin within proximity of a park after law enforcement obtained a search warrant and discovered cocaine

and heroin at 609 A Pleasant Grove Lane in Charleston. Before trial, Kinloch moved to suppress the drugs, raising the following grounds to support his motion to suppress: (1) the search warrant affidavit was not sufficient to establish probable cause to search 609 A; (2) the good faith exception to the exclusionary rule did not apply; and (3) even if the affidavit were sufficient, law enforcement intentionally omitted exculpatory information, which, if included, would defeat probable cause. The trial judge suppressed the drugs, finding the search warrant affidavit was insufficient to establish probable cause. The Court of Appeals affirmed. *State v. Kinloch*, Op. No. 2012-UP-432 (S.C. Ct. App. filed July 18, 2012). The State petitioned for a writ of certiorari, and we granted the petition.

### Factual/Procedural Background

Law enforcement prepared an affidavit, setting forth the following facts in support of obtaining a search warrant for 609 A.

> On January 2, 2008, law enforcement conducted surveillance of 609 A after receiving "numerous complaints about heroin and cocaine transactions" at 609 A "over the past several months."[1] During its surveillance, law enforcement observed two white males meet with a black male wearing a red shirt, red pants and red hat.[2] The parties entered the residence for about "one minute," and the white males exited the residence, walking in the direction of Highway 17. On three or four other occasions, law enforcement observed the black male in a red shirt exit the residence and meet unknown parties, with whom the black male in a red shirt engaged in quick "hand-to-hand" transactions. Law enforcement observed the black male in a red shirt counting money after the transactions as he returned to 609 A. During each transaction, the black male in a red shirt was accompanied by

---

[1] At the time of law enforcement's surveillance and the complaints regarding drug activity, it was not clear whether 609 A was Kinloch's residence. There has been no challenge to whether Kinloch maintained a "legitimate expectation of privacy" in 609 A. *See State v. Missouri*, 361 S.C. 107, 111, 603 S.E.2d 594, 594 n.2 (2004) (noting whether a party may challenge a search under the Fourth Amendment depends on whether there is a "legitimate expectation of privacy in the . . . the premises searched").

[2] When law enforcement executed the search warrant, it identified Kinloch as the man in the red shirt, red pants, and red hat.

another male wearing a black puffy jacket. Law enforcement observed the black male in a red shirt walking into and out of the residence on several occasions. At around 5:00 p.m. that same day, law enforcement observed the male in the black puffy jacket exit the residence and walk towards a gas station on Highway 17. The subject handed an unknown black male, later identified as Redondo Burns, a clear plastic wrapping in exchange for money. Law enforcement approached Burns, at which point he dropped a clear plastic baggy containing a white powdery substance, which tested positive for heroin. Law enforcement observed the male in the black puffy jacket return to 609 A.

Based on the above information, the magistrate issued a warrant to search 609 A for drugs and items related to the purchase and distribution of drugs. No supplemental testimony was taken

Upon executing the search warrant, law enforcement recovered the following from 609 A: (1) twenty grams of heroin from Kinloch's pocket; (2) two baggies each containing ten grams of white powder; (3) a one dollar bill containing a brown powder substance on the kitchen counter; (4) cocaine base on the kitchen counter; (5) a brown wrapper containing a green leafy substance on the kitchen counter; and (6) items suggesting Kinloch manufactured or distributed narcotics.

Kinloch moved to suppress the drugs, arguing the search warrant affidavit did not set forth sufficient facts to establish probable cause to search 609 A and thus, the search violated the Fourth Amendment.[3] Specifically, Kinloch contended the suspicious foot traffic outside 609 A, coupled with finding drugs on Burns, a person who was never connected to the residence, was not sufficient to establish probable cause to search 609 A. Thus, Kinloch argued the search warrant affidavit was insufficient because there was not a sufficient nexus to connect the drugs that were recovered from Burns to 609 A

The trial judge granted Kinloch's suppression motion, finding the affidavit was insufficient because the affidavit failed to link the drugs recovered from Burns to 609 A. The trial judge relied on *State v. Gentile*, 373 S.C. 506, 646 S.E.2d 171 (Ct. App. 2007), and stated that while there was a lot of suspicious activity outside

---

[3] Kinloch also raised a state constitutional argument and an argument as to the purported infirmity of the search warrant pursuant to S.C. Code Ann. § 17-13-140 (2014). Neither impacts our analysis or decision today.

609 A, law enforcement only recovered drugs "some distance from 609 A" and that was not sufficient to establish probable cause to search the residence.

The State appealed, arguing the trial judge erred in finding the affidavit was insufficient to establish probable cause because in doing so, the trial judge improperly required the affidavit to establish with "near certainty" that drugs would be found at 609 A, rather than the proper "fair probability" standard.  The State further argued the tips of drug activity outside 609 A, and law enforcement's observance of "hand-to-hand" transactions outside the residence collectively were sufficient to establish probable cause to search 609 A.  Thus, the State contended the trial judge's suppression ruling should be reversed since the trial judge utilized an improper standard of review, and since a sufficient nexus was established between 609 A and Kinloch's drug activity.

The Court of Appeals affirmed.  The Court of Appeals cited "clear error" as the standard of review for determining whether the trial judge erred in finding the search warrant was not supported by probable cause.  *Kinloch*, Op. No. 2012-UP-432 (S.C. Ct. App. filed July 18, 2012).  However, the Court of Appeals then cited *Gentile* and parenthetically noted the magistrate in *Gentile* did not have a "substantial basis" for his probable cause determination because the search warrant affidavit failed to connect the evidence of drug activity to Gentile's residence.  *Id.*

## Issue

Did the Court of Appeals err in finding the search warrant affidavit was insufficient to establish probable cause?

## Law/Application

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. Const. amend. IV.  A search or seizure does not violate the Fourth Amendment if it is authorized by a warrant that is supported by probable cause.[4]  *Id.*; *see State v. Baccus*, 367 S.C. 41, 50, 625 S.E.2d 216, 221 (2006), *cert. denied*, 555 U.S. 1074 (2008).  A warrant is supported by probable cause if, given the totality of the circumstances set forth in the affidavit, there is a fair probability that contraband or

---

[4] Section 17-13-140 also states that a search warrant shall be issued "only upon affidavit sworn to before the magistrate, municipal judicial officer, or judge of a court of record establishing the grounds for the warrant."  S.C. Code Ann. § 17-13-140 (2014).

evidence of a crime will be found in a particular place. *Baccus*, 367 S.C. at 50, 625 S.E.2d at 221 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In reviewing a magistrate's probable cause determination, circuit court judges must determine whether the issuing magistrate had a substantial basis upon which to conclude that probable cause existed. *Baccus*, 367 S.C. at 50, 625 S.E.2d at 221; *see also State v. Bellamy*, 336 S.C. 140, 143–45, 519 S.E.2d 347, 348–49 (1999) (applying the fair probability standard and stating the duty of a reviewing court is to ensure the magistrate had a substantial basis for its probable cause determination). As the Supreme Court in *Gates* noted, reviewing a magistrate's probable cause determination based on the "substantial basis" standard encourages law enforcement to seek a warrant, rather than conduct warrantless searches with the hope of relying on some other exception to the warrant clause. *See Gates*, 462 U.S. at 237. If no supplemental testimony is taken, a magistrate's probable cause determination is limited to the four corners of the search warrant affidavit. *See, e.g.*, *State v. Herring*, 387 S.C. 201, 214, 692 S.E.2d 490, 497 (2009)

In finding the search warrant affidavit insufficient to establish probable cause, both the trial judge and the Court of Appeals relied on *State v. Gentile*, a case in which the following facts were insufficient to support the magistrate's probable cause finding: (1) anonymous tips indicating a high volume of traffic frequented outside Gentile's residence; (2) a citizen complaint regarding the smell of marijuana near the residence; and (3) the arrest of a visitor to Gentile's residence, during which law enforcement recovered marijuana from the visitor. 373 S.C. 506, 514–18, 646 S.E.2d 171, 175–77 (Ct. App. 2007).

Although *Gentile* is factually similar, it is not dispositive. Rather, here, unlike *Gentile*, the facts set forth in the affidavit establish that law enforcement received numerous complaints over the course of several months regarding drug activity at 609 A. After receiving those complaints, but prior to seeking a search warrant, law enforcement observed activity consistent with drug activity when they observed parties conducting "hand-to-hand" transactions outside 609 A and saw a man counting money as he returned to the residence. Based, in part, on this observation, law enforcement followed the man they had seen outside 609 A to a nearby gas station, where they saw this man hand another unknown man, later identified as Burns, a clear plastic wrapping in exchange for money. When law enforcement approached Burns, he dropped the clear plastic baggy, the contents of which tested positive for heroin.

We find based on these facts that the Court of Appeals erred in affirming the circuit court's suppression ruling as the magistrate had a substantial basis for reaching his probable cause determination. *See Baccus*, 367 S.C. at 50, 625 S.E.2d at 221 (reviewing a magistrate's finding of probable cause under the "substantial basis" standard of review). We reach this conclusion after acknowledging that independently each fact set forth in the search warrant affidavit is merely suspicious, but the totality of the circumstances—namely, the numerous tips indicating drug activity was probably present at 609 A and the subsequent surveillance of 609 A during which seemingly drug-related behavior was observed—distinguishes this case from *Gentile*. Likewise, we note that our decision today is based, in part, on the uncertainty as to the standard applied to review the magistrate's probable cause determination. *See Kinloch*, Op. No. 2012-UP-432 (S.C. Ct. App. filed July 18, 2012) (reciting, erroneously, "clear error" as the standard by which it was reviewing the trial judge's decision).

Accordingly, we reverse and remand with instructions that the circuit court proceed in a manner consistent with this opinion.[5]

**TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.**

---

[5] We do so reminding the parties that they are free to litigate the issues not addressed in this opinion. For example, in Kinloch's suppression motion, he also argued that the drugs should be suppressed because he was entitled to a *Franks* hearing based on exculpatory information that law enforcement intentionally omitted. *See, e.g.*, *State v. Missouri*, 337 S.C. 548, 557, 524 S.E.2d 394, 398 (1999) (applying *Franks v. Deleware*, 438 U.S. 154 (1978), and finding, *inter alia*, that evidence should be suppressed when it was obtained on the basis of a search warrant affidavit that excluded exculpatory information). The circuit court did not reach Kinloch's argument as its determination as to the existence of probable cause was dispositive. The merits of that issue have yet to be decided.

Further, we decline to reach the State's remaining argument regarding the applicability of the good faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984), for we find our resolution of the issue regarding the sufficiency of the search warrant affidavit is dispositive. *See State v. Henson*, 407 S.C. 154, 167, 754 S.E.2d 508, 515 n.4 (2014) (declining to reach an additional argument where the resolution of the first issue was dispositive).